CC: USM; PSA

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GUIA CABACTULAN, MARISSA DUENAS, and AMANDA ESTOPARE,<br><br>　　　　　Defendants. | Case No.: MJ 20-00354-DUTY<br><br>**ORDER OF DETENTION FOR DEFENDANT MARISSA DUENAS** |

## I. INTRODUCTION

On January 27, 2020, the Government filed a criminal complaint against Defendants Guia Cabactulan, Marissa Duenas, and Amanda Estopare, alleging a conspiracy to commit immigration fraud in violation of 18 U.S.C. § 371. (Dkt. 1 [hereinafter "Compl."].) On January 30, 2020, Defendant Duenas made her initial

-1-

appearance before the Honorable Autumn D. Spaeth, United States Magistrate Judge. (Dkt. 13.) Judge Spaeth conducted a pretrial detention hearing and ordered Duenas detained pending trial, finding that she was a flight risk and a danger to the community. (*Id.*) Duenas now moves for review of Judge Spaeth's detention order and for release on bail. (Dkts. 22, 29.)[1]  For the following reasons, Duenas's motion is **DENIED**.

## II. BACKGROUND

On February 12, 2020, a grand jury returned an indictment charging Duenas with a criminal conspiracy in violation of 18 U.S.C. § 371.  Specifically, it charges that she conspired to commit the following human trafficking and immigration offenses: (1) Trafficking with Respect to Forced Labor in violation 18 U.S.C. § 1590(a); (2) Document Servitude in violation of 18 U.S.C. § 1592(a)(3); (3) Immigration Fraud in violation of 18 U.S.C. § 1546(a); and (4) Marriage Fraud in violation of 8 U.S.C. § 1325(c).

The criminal complaint and indictment allege the following facts.  Defendants were part of a human trafficking ring orchestrated by their employer, the Philippines-based Kingdom of Jesus Christ church ("KOJC").  Defendants submitted fraudulent visa applications on behalf of KOJC "volunteers" from the Philippines.  Once the "volunteers" arrived in the United States, Defendants confiscated their passports and forced them to work long hours soliciting donations for a fraudulent charity.  These donations were funneled to the KOJC's leadership in the Philippines to support their personal expenses and purchase luxury items.  Specifically, KOJC's senior leader has

---

[1] The Court considers the instant motion as the presiding Criminal Duty Judge.  The Court initially denied without prejudice Duenas's motion so that the District Court Judge who would soon be permanently assigned to this case could review Judge Spaeth's detention order.  (Dkt. 24.)  After the parties fully briefed the issues, however, the Court agreed to move forward with the instant review and held a hearing on February 12, 2020.  (Dkt. 32.)

used these donations to build a stadium and compound in Davao City (the "Kingdome") and to purchase a private jet, helicopters, and luxury vehicles.

"Volunteers" were forced to work nearly every day, year-round. They lived in KOJC's compound in Van Nuys, California, but were not otherwise compensated. "Volunteers" were also forced travel across the country soliciting donations, sleeping in cars without access to basic necessities. Defendants set quotas for their daily solicitations, and, if they failed to meet their quotas, workers were mentally and physically abused, beaten with paddles, isolated, and forced to fast. Victims also report being punished for leaving the KOJC, for having relationships with non-KOJC members, and for making negative statements about leadership. Female victims were pressured to have sex with KOJC's senior leader, which is referred to as "night duty." Workers that were effective at soliciting donations were pressured into sham marriages with KOJC members so that they could continue working. Defendants orchestrated these sham marriages, as well as divorces and remarriages, to build KOJC's workforce. Bank records and other evidence suggests that KOJC workers collected approximately $20 million in donations between 2014 and 2019.

Duenas was allegedly the "human resources leader" of the KOJC's United States operations. She worked under Defendant Cabactulan and took on several of Cabactulan's previous responsibilities. Duenas was responsible for collecting and securing the passports and immigration documents of KOJC "volunteers," applied for sham marriage certificates and fraudulent visas, and tracked the immigration status of more than ninety KOJC workers.

//
//
//

## III. ANALYSIS

The Bail Reform Act permits pretrial detention only upon certain findings. 18 U.S.C. §§ 3142, *et seq*. "The whole spirit of the Bail Reform Act . . . is that a defendant facing trial should be released, rather than detained, unless there are strong reasons for not releasing him." *United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972). The burden rests with the Government, which must prove by a preponderance of evidence that the defendant poses a serious risk of flight and by clear and convincing evidence that the defendant poses a danger to the community. *See* 18 U.S.C. §§ 3142(e), (f); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The Government must also show that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In determining whether to release or detain a defendant, the Court considers (i) the nature and circumstances of the offenses charged, (ii) the weight of the evidence against the defendant, (iii) the history and characteristics of the defendant, and (iv) the nature and seriousness of the danger to the community. 18 U.S.C. § 3142(g).

After considering these factors and the evidence presented by the parties and the arguments of their counsel, the Court concludes the Government has met its burden. Consequently, Duenas must be detained pending trial.

### A. Flight Risk

The Court finds by a preponderance of the evidence that Duenas is a serious flight risk and that no condition or combination of conditions will reasonably assure her appearance as required.[2]

---

[2] Pretrial Services also recommends detention based on its finding that no condition or combination of conditions will reasonably assure Duenas's appearance as required.

First, Duenas has a powerful incentive to flee the country. She is accused of supervising the victims of an international human trafficking ring. If convicted of a conspiracy to commit these human trafficking and immigration offenses, she faces a statutory maximum of five years in prison. Based on the available evidence, the government estimates that the guideline range for her sentence would be 97 to 121 months—well above the statutory maximum.

More fundamentally, the charges against her pose a fundamental threat to KOJC, Duenas's employer, the hub of her community, and—the evidence suggests—a dangerous and powerful criminal organization. If released on bail, Duenas could be pressured to flee to protect the organization. Duenas might also decide that, with KOJC in jeopardy, she has no choice but to flee. Duenas's livelihood depends on KOJC. She has no property and limited savings. Since immigrating from the Philippines in 2008, KOJC has been Duenas's only employer. Her home in Delano, California is owned by KOJC. She also borrows a KOJC-owned car for transportation. Although Duenas's mother and sister live in California, the charges against her threaten to upend her life here.

Second, Duenas has the means, resources, and connections to flee to the Philippines. KOJC has millions of dollars, a private plane, helicopters, and an international network capable of moving money and people across international boundaries. For example, in 2018, a KOJC administrator was arrested after law enforcement found more than $330,000 wrapped in socks on a KOJC-owned private plane. On January 29, 2020, federal agents found approximately 72 passports from the Philippines, seven United States passports, and one Ukranian passport in Cabactulan and Duenas's shared office at the Van Nuys compound. The evidence also shows that Duenas is in contact with KOJC leadership in the Philippines and sends them luxury items every few months. She has been instrumental to their successful efforts to raise

millions of dollars for fraudulent charities. The instant charges could threaten those profits. For example, the government has collected evidence that Duenas personally delivered bags of money to a KOJC-owned mansion in Calabasas, California, where the organization's senior leader stays when visiting California. KOJC's leaders in the Philippines therefore have a strong incentive to protect themselves by helping or, indeed, forcing Duenas to flee the United States.

Third, Duenas has strong personal ties to the Philippines. She was born and spent most of her adult life in the Philippines and still has family living there. In September 2019, Duenas married a citizen of the Philippines. And, of course, KOJC is based in the Philippines, with its central "Kingdome" compound in Davao. Duenas made month-long trips to the Philippines in 2008, 2009 or 2010, 2012, 2015, 2016, 2017, and December 2019 to attend KOJC's annual conventions.

Fourth, the evidence shows Duenas has a sophisticated understanding of the immigration system, the skills to manipulate that system, a history of defrauding immigration officials, and a clear disregard for the rule of law. The government has cited emails in which Duenas coordinated the arrival of "volunteers" at airports across the country and sent other KOJC members "a series of probable questions and answers" for victims to prepare for immigration inquiries. One victim reports that Duenas applied for student visas and enrolled her as a student at a California university without the victim's knowledge or consent. Another reports that Duenas maintained ATM cards and fraudulent joint bank accounts to substantiate sham marriages and submitted fraudulent Petitions for Alien Relatives. Victims explain that Duenas personally withheld their passports and other identifying documents, including green cards, student visas, and marriage certificates. If they wanted to access these documents, they had to ask Duenas for permission. Duenas would then personally accompany and coach them through immigration proceedings, and even travelled across the country to orchestrate sham

marriages through affiliates in other states. After Duenas learned about an investigation of KOJC in Hawaii, she took evasive action and started storing victims' identifying documents at new location and working out of offices in different cities. This troubling and brazen conduct, if true, is strong evidence that Duenas will not appear as required if released on bond.

### B. Danger to the Community

The Court also finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Duenas is released. Put simply, the evidence suggests that KOJC operates a human trafficking ring and abuses victims for violating the terms of their confinement. Duenas played an instrumental role in supervising "volunteers." At least two victims report that Duenas forced them to enter fraudulent marriages. One reports that Duenas commenced divorce proceedings for him without his knowledge. In March 2018, Cabactulan and Duenas allegedly refused to provide a victim with her green card until she wrote and signed a letter stating that her work at KOJC was voluntary. In January 2020, federal agents found Duenas in possession of a file titled "Traitor" that contained information on KOJC members who have fled from KOJC.

Releasing Duenas on bail would create an unmitigated risk for KOJC workers and the community at large. Victims report serious physical and psychological abuse at the hands of KOJC. Specifically, they report being punished by confinement in area called the "Upper Six" for failing to perform their duties properly. One victim reports she was sent to the Upper Six for having a relationship with a non-KOJC member. She reports being isolated and forced to fast and listen to prerecorded sermons for at least three days. Another victim reports having her head shaved, being forced to wear an orange shirt with "SOS"—for "Son of Satan"—on the back, and being hit on the back with a paddle

approximately 100 times during her first day in isolation. Several victims have cooperated with law enforcement and made statements to federal officials. Others may attempt to contact federal agents soon. If released on bail, Duenas would return to her home owned by KOJC. The Court finds that no conditions of release could adequately mitigate the risk that she would contact other perpetrators and victims of the alleged scheme.

**IV. CONCLUSION**

For the foregoing reasons, Defendant Duenas's motion is **DENIED**.

**IT IS THEREFORE ORDERED** that Defendant Duenas be detained prior to trial.

**IT IS FURTHER ORDERED** that Defendant Duenas be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

**IT IS FURTHER ORDERED** that Defendant Duenas be afforded reasonable opportunity for private consultation with counsel.

*//*
*//*
*//*
*//*
*//*
*//*

**IT IS FURTHER ORDERED** that, on order of a Court of the United States or on request of any attorney for the Government, the person in charge of the corrections facility in which Defendant Duenas is confined deliver her to a United States marshal for the purpose of an appearance in connection with a court proceeding.

DATED: February 14, 2020

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE